# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

**No. 21-2020V**

| | |
|---|---|
| KELLEY PATTERSON,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: June 10, 2026 |

*Jonathan Joseph Svitak, Shannon Law Group, P.C., Woodridge, IL, for Petitioner.*

*Jamica Marie Littles, U.S. Department of Justice, Washington, DC, for Respondent.*

**RULING ON ENTITLEMENT**[1]

On October 14, 2021, Kelley Patterson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), amending her petition on September 6, 2024. Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 9, 2019. Amended Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

**For the reasons set forth below, I find that Petitioner is entitled to compensation.**

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I.    Relevant Procedural History

Following the filing of this case, the parties began settlement discussions on February 5, 2025. ECF No. 39. That same day, the Court held a status conference and issued a related non-PDF Scheduling Order, providing a briefing schedule if the parties did not resolve damages informally by April 30, 2025. The parties subsequently attempted to resolve damages informally, but they reached an impasse. Petitioner thereafter filed a motion for a ruling on the record on April 30, 2025. Petitioner's Brief in Support of her Motion for Ruling on the Record ("Mot."), ECF No. 40. On July 7, 2025, Respondent filed a response. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Resp."), ECF No. 43. The matter is ripe for resolution.

## II.    Relevant Factual History

On October 9, 2019, Petitioner received a flu vaccine in her right shoulder at her place of employment. Ex. 9 at 1. Nine days later, Petitioner reported neck pain that radiated to her right shoulder that she reported had started that same day. Ex. 5 at 1, 3-4.

Petitioner complained of shoulder pain on November 8, 2019, to nurse practitioner ("N.P.") Courtney MacDonald at her workplace health unit. Ex. 2 at 7-8. She stated her pain began "immediately" upon receiving the vaccination, and described it as a stinging pain that "seemed to radiate medially toward her chest." *Id.* at 7. Petitioner also reported the pain in her chest resolved, but her shoulder pain intensified over the next three weeks. *Id.* An examination showed pain in her shoulder and a vaccination site that was "slightly more proximal and medial than the appropriate location for an IM injection…" *Id.* However, there was no record of radiating pain or pain in her neck at that time. *Id*. A Medrol Dosepak was prescribed, and Petitioner was instructed to avoid lifting anything over 20 pounds. *Id.* at 8. Petitioner reported slight improvement during two follow-up appointments in November and December of 2019. Ex. 2 at 5-6.

Between December 4, 2019, and January 21, 2020, Petitioner attended eleven physical therapy sessions. Ex. 17 at 25, 51, 73. At the initial session, Petitioner reported right shoulder pain "that is worse with activity following a flu shot in October." *Id.* at 25. By January 21, 2020, she reported her shoulder was "about 90% better" but still hurt while "boosting patients" at work. *Id.* at 73. Petitioner was discharged from physical therapy on March 5, 2020. *Id.* at 51-52.

Petitioner attended a follow-up on January 22, 2020, and recalled "her mechanism of injury at the Flu Clinic at St. Mary's, she received an intramuscular injection…." Ex. 2

at 3. At that time, she reported an improved range of motion in her right shoulder and decreased pain, rated as "0-5/10". *Id.* N.P. MacDonald noted that Petitioner was "quite busy" with work, and that she "would like to put her PT on hold for now" but continue her home exercises. *Id.* Petitioner returned to NP MacDonald on February 26, 2020, reporting intermittent sharp pain in her right shoulder with certain movements. *Id.* at 2. N.P. MacDonald noted that Petitioner "likely developed bursitis or possibly even adhesive capsulitis in response to the pain she received following the [flu] injection." *Id.* No work restrictions were needed because Petitioner was "able to modify her body mechanics…" *Id.*

On June 25, 2020, Petitioner saw orthopedist Randy Busso, M.D., for treatment of right shoulder pain and numbness. Ex. 4 at 2-5. She reported her "[p]ain complaints began in October 2019. She underwent a flu vaccination. She believes the nurse was somewhat high and felt left chest wall pain. Her pain persisted over the neck several days. Progressive became more intense." *Id.* at 2. An examination showed full range of motion and strength, with mild impingement signs. *Id.* at 5. She was diagnosed with right shoulder pain and rotator cuff tendinitis. *Id.* at 5. An MRI performed on August 14, 2020, showed small joint effusion but no signs of tendon or labrum tears. Ex. 3 at 2. Petitioner returned to Dr. Busso on September 2, 2020, and received a steroid injection a week later. Ex. 4 at 16, 18. Petitioner next treated for shoulder pain on December 31, 2020, when she returned to Dr. Russo. *Id.* at 19. She had been doing well until her pain increased in "the end of November." *Id.*

On March 17, 2021 Petitioner saw orthopedic surgeon Dr. Edward Shields. Ex. 3 at 6-8. She reported that "she had a flu shot in October 2019 and has had a tremendous amount of right shoulder pain since that time." *Id.* at 6. A second steroid injection was administered. *Id.* at 7-8. Petitioner's symptoms returned, and on August 9, 2021, she was diagnosed with bursitis impingement and rotator cuff tendinitis. *Id.* A third injection was administered.

Petitioner's pain returned gradually returned (*see* Ex. 7 at 1-2 (follow-up with Dr. Shields on December 15, 2021, noting "h]er injection helped partially back in August and over the past couple of months the symptoms have steadily returned), and she ultimately underwent arthroscopic surgery on July 29, 2022. Ex. 11 at 8-11.

### III.    Legal Standards for SIRVA

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must preponderantly prove the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of

petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

4

contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at \*20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at \*5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

## IV.    Factual Findings Regarding a Table SIRVA

A preponderance of the record evidence supports the conclusion that Petitioner has satisfied the QAI requirements for a Table SIRVA.

### A.    Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion. And I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her right shoulder that would explain her symptoms.[4]

---

[4] At most, Petitioner reported thoracic back pain that extended to her right shoulder six months prior to the flu vaccination. Mot. at 13. However, she was never assessed with right shoulder injury or dysfunction. *Id.*

**B.    Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination**

The record preponderantly establishes onset of injury occurred close-in-time to the October 9, 2019 vaccination. Petitioner first reported shoulder pain on November 8, 2019, noting her pain began "immediately" after receiving the flu vaccine. Ex. 2 at 7-8. Additionally, Petitioner repeatedly linked her shoulder pain to this same vaccination. *See, e.g.*, Ex. 2 at 3 (recalling the mechanism of injury as the flu vaccine she received at St. Mary's flu clinic); Ex. 4 at 2 (record from June 25, 2020 reporting her pain "began in October 2018 [s]he underwent flu vaccine") Ex. 3 at 6 (stating "she had a flu shot in October 2019 and has had a tremendous amount of right shoulder pain since that time").

Respondent argues that Petitioner delayed treatment for 31 days after her vaccination, while failing to report shoulder pain at an intervening medical appointment on October 18, 2019. Resp. at 14-15. But I do not deem this interval significant enough to cast doubt on onset, or the fact that at one appointment she did not mention the shoulder issue. She otherwise consistently linked her shoulder pain to the flu vaccine, and described onset as close-in-time to the vaccination.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's right shoulder pain more likely than not occurred within 48-hours of vaccination.

**C.    Petitioner's Pain was Limited to her Right Shoulder**

The record also establishes that Petitioner's pain was limited to her right shoulder. *See, e.g.*, Ex. 5 at 7 (reporting "right shoulder pain" on November 8, 2019); Ex. 4 at 2-5 (describing right shoulder pain and restrictions following the flu vaccination). Respondent argues that Petitioner experienced pain outside her shoulder, citing the November 8, 2019, record wherein she reported pain that radiated to her chest or began in her neck. Resp. at 16. However, a closer look at the record refutes this. Petitioner stated that the pain seemed to initially radiate medially *toward* her chest, but that quickly resolved. Ex. 2 at 7. Further, the November 8, 2019, record specifically states there was no radiating shoulder pain or neck pain at that time. *Id.* Overall, the totality of treatment evidence reveals an orientation toward resolving shoulder issues.

**D.    There is No Evidence of Another Condition or Abnormality**

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim.

### E.    Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on October 22, 2018, in the United States. Ex. 9; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 3; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

### Conclusion

**For all of the reasons discussed above, and based on consideration of the record as a whole, I find Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

7